UNITED STATES DISTRICT COURT         INDEX NO. CV-15-3558
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------

SEAN PORTER,

**COMPLAINT**

            Plaintiff,

   – Against –

PORT AUTHORITY OF NEW YORK AND NEW JERSEY,
OFFICE OF INSPECTOR GENERAL, HUNTLEY LAWRENCE,
in his individual and official capacity, JOHN TUCCI, in his
individual and official capacity, THOMAS L. BOSCO,
in his individual and official capacity, and PORT AUTHORITY
OFFICERS JOHN DOES 1-4, in their individual and
official capacities,

            **JURY TRIAL DEMANDED**

            Defendants.

-------------------------------------------------------------------

Plaintiff by his attorneys, CARTRIGHT AND COMPANY, as and for his complaint against defendants, respectfully states and alleges, upon information and belief, as follows:

### PRELIMINARY STATEMENT

1.     This is a civil action for money damages against PORT AUTHORITY OF NEW YORK AND NEW JERSEY, OFFICE OF INSPECTOR GENERAL, HUNTLEY LAWRENCE, in his individual and official capacity, JOHN TUCCI, in his individual and official capacity, THOMAS L. BOSCO, in his individual and official capacity, and PORT AUTHORITY OFFICERS JOHN DOES 1-4, in their individual and official capacities (hereinafter referred to as "PORT AUTHORITY DEFENDANTS"), committing acts under color of law and depriving plaintiff of rights secured under 42 U.S.C. § §1981,1983, 1985 and 1986, grounded in rights secured by the United States Constitution, and laws of the United States and under the laws of

the State of New York. Plaintiff alleges that defendants PORT AUTHORITY OF NEW YORK AND NEW JERSEY, OFFICE OF INSPECTOR GENERAL, HUNTLEY LAWRENCE, in his individual and official capacity, JOHN TUCCI, in his individual and official capacity, THOMAS L. BOSCO, in his individual and official capacity, and PORT AUTHORITY OFFICERS JOHN DOES 1-4, in their individual and official capacities, engaged in unlawful conduct including false arrest, false and unlawful imprisonment, abuse of process, malicious prosecution, intentional infliction of emotional distress that resulted in physical and emotional harm, property damages, psychological damages, and damage to name and reputation. All acts were committed under the color of law and depriving Plaintiff of rights secured by the Constitution and laws of the United States and the State of New York.

2.      Specifically, Plaintiff alleges that the Defendants, collectively and individually, negligently, wantonly, recklessly, intentionally, and knowingly sought to and did wrongfully deprive Plaintiff of various Constitutional rights, pursuant to the above mentioned federal statutes and causes of action by committing acts under the color of law and depriving the Plaintiff of rights secured by the Constitution and laws of the State of New York. For purposes of the herein mentioned causes of action, including but not limited 42 U.S.C. Section 1983, and conduct that is the subject of this Complaint, Defendant PORT AUTHORITY is a state and municipal actor.

3.      Plaintiff alleges that the Defendant, PORT AUTHORITY OF NEW YORK AND NEW JERSEY, was negligent in training, hiring and supervising employees, management personnel and officers, thus leading to the unjustified false arrest, false and unlawful imprisonment, abuse of process, malicious prosecution, intentional infliction of emotional distress of SEAN PORTER.

2

4.      Plaintiff alleges that the Defendant's Office of the INSPECTOR
GENERAL was negligent in investigating incidents and complaints made by employees
and supervising employees, management personnel and officers in that department, thus
leading to the unjustified abuse of process, malicious prosecution, intentional
infliction of emotional distress of employees by Office of Inspector General members and
the PORT AUTHORITY.

5.      HUNTLEY LAWRENCE, in his individual and official capacity, JOHN TUCCI,
in his individual and official capacity, THOMAS L. BOSCO, in his individual and official
capacity, and PORT AUTHORITY OFFICERS JOHN DOES 1-4, in their individual and official
capacities conspired to have SEAN PORTER falsely arrested, falsely charged, falsely jailed,
deprived of his freedom, maliciously and falsely accused, abused, and maliciously
prosecuted by the FLORIDA AUTHORITIES. Said conduct towards Plaintiff deprived him
of civil and constitutional rights.

6.      HUNTLEY LAWRENCE, in his individual and official capacity, JOHN TUCCI,
in his individual and official capacity, THOMAS L. BOSCO, in his individual and official
capacity, and PORT AUTHORITY OFFICERS JOHN DOES 1-4, in their individual and official
capacities used their authorities to deprive the Plaintiff of federally protected rights under
§1983, with a callous disregard for the consequences of their actions, condoned and
encouraged such civil rights violations by denying rights of Plaintiff. It is for these and other
wrongful and unlawful acts by Defendants, who knew, should have known, or should have
become aware, that the harassment, intimidation and conspiracy was unlawful, that there was
no merit to the allegations made to the Florida Authorities and the ensuing arrest, charging

3

and prosecution that led to damage of Plaintiff's reputation, embarrassment, severe emotional distress, loss of career opportunities, attorneys' fees and physical trauma that require Plaintiff to be treated continuously in the future.

7.       Plaintiff further alleges that Defendants, individually and collectively, were negligent, reckless, indifferent and/or intentionally breached their duties and legal obligation with respect to their interactions with and treatment of Plaintiff described herein, which directly caused the injury of Plaintiff, and Plaintiff seeks, including but not limited to as follows: actual, consequential, enhanced, exemplary and punitive damages, costs and expenses, and attorneys' fees.

## JURISDICTION

8.       The jurisdiction of this Court is invoked under 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988 and the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §§1331 and 1343(3) and (4) and the aforementioned statutory and constitutional provisions. Plaintiff further invokes the pendent jurisdiction of this Court, pursuant to 28 U.S.C.A. §1367, to hear and decide any and all claims arising under state law.

9.       That all conditions precedent to instituting the lawsuit have been complied with in a timely manner.

10.     Venue in the Eastern District of New York is proper under 28 U.S.C. § §139l(b). The cause of action arose in the Eastern District of New York. Plaintiff resides in Suffolk County.

## PARTIES

11.     Plaintiff SEAN PORTER is a natural person, who resides in the County of Suffolk, State of New York, at all times relevant herein is a citizen of the United States.

12.     Upon information and belief, Defendant PORT AUTHORITY OF NEW YORK AND NEW JERSEY, was and is a duly constituted municipal corporations of the State of New York existing and operating under and by the virtue of the laws of the State of New York. This dual state corporate entity runs through the regional transportation infrastructure within the Ports of New York and New Jersey, with a corporate headquarters at 4 World Trade Center, 150 Greenwich Street, New York, NY 10007 and 225 Park Avenue South, New York, NY 10003. At all relevant times, Defendant PORT AUTHORITY OF NEW YORK AND NEW JERSEY possesses a site located at JFK International Airport in Queens, NY.

13.     HUNTLEY LAWRENCE, at all times relevant to this complaint was employed by PORT AUTHORITY OF NEW YORK AND NEW JERSEY, and was acting in furtherance of the scope of his employment, acting under color of law, to wit under color of statutes, ordinances, regulations, polices, customs and usages of the State of New York.

14.     JOHN TUCCI, at all times relevant to this complaint was employed by the PORT AUTHORITY OF NEW YORK AND NEW JERSEY and was acting in furtherance of the scope of his employment, acting under color of law, to wit under color of statutes, ordinances, regulations, polices, customs and usages of the State of New York.

15.     THOMAS L. BOSCO, at all times relevant to this complaint was employed by the PORT AUTHORITY OF NEW YORK AND NEW JERSEY (hereinafter referred to

5

as "PORT AUTHORITY"), and was acting in furtherance of the scope of his employment, acting under color of law, to wit under color of statutes, ordinances, regulations, polices, customs and usages of the State of New York.

## FACTUAL
## ALLEGATIONS

16.     SEAN PORTER is a male of African descent. He is currently an employee of the PORT AUTHORITY (working primarily out of JFK International Airport in Queens) and believes that as an employee of the PORT AUTHORITY, particularly under Assistant Director of Aviation HUNTLEY LAWRENCE, he has been treated differently from other similarly situated Caucasian counterparts, and differently from counterparts who have not exercised their protected rights under the Constitution.

17.     SEAN PORTER is a twenty-five (25) year employee of the PORT AUTHORITY, with an exemplary work record. He has had no disciplinary actions taken against him during his tenure at PORT AUTHORITY. Prior to serving under this Asst. Director, Plaintiff moved up the ranks and has maintained supervisory and management positions. SEAN PORTER has attained various certifications and advanced degrees during his time at PORT AUTHORITY.

18.     SEAN PORTER contends that he has been subjected to the PORT AUTHORITY'S custom, pattern and practice of treating employees of African descent differently from other similarly situated employees in various ways, including but not limited to, overly scrutinizing, targeting and monitoring employee work and conduct, applying the policies and procedures differently, denying   promotions, benefits, and accommodations,

baselessly seeking trumped charges against employees internally and externally, retaliating against employees for opposing certain improper/unlawful conduct by superiors and retaliating against employees for participating and/or testifying on behalf of another employee in PORT AUTHORITY administrative actions and/or external criminal proceedings.

19.     SEAN PORTER believes that a motive behind the PORT AUTHORITY'S conduct is Mr. PORTER'S racial, national and ethnic origin, being of African descent (Black/Afro-Caribbean), Other similarly situated employees who were not of African descent have been treated differently from SEAN PORTER.

20.     In addition, within the past few years, SEAN PORTER engaged in protected activities when he cooperated with the defense of an employee and criminal investigation related to a co-worker of African descent. This co-worker was eventually acquitted of all criminal charges and the employee related investigation was dismissed. Since that time, SEAN PORTER has continuously been treated in an adverse and retaliatory manner.

21.     The hostile and retaliatory conduct escalated during the summer of 2014, when a promotion opportunity presented itself in SEAN PORTER'S department for the first time in years. Despite voicing his interest in the position and stating his qualifications, SEAN PORTER was denied an opportunity to interview and subsequently was passed over for the promotion.

22.     In June of 2014, SEAN PORTER had a conversation with HUNTLEY LAWRENCE, the subject of which further supports Mr. PORTER'S contention that he has been retaliated and discriminated against. During that conversation, SEAN PORTER

7

reiterated to HUNTLEY LAWRENCE his interest in being promoted. Rather than consider SEAN PORTER for the position, HUNTLEY LAWRENCE advised SEAN PORTER that he would "be going in a different direction" and that he "should be seeking opportunities elsewhere". Upon information and belief, the aforementioned promotion was given to a white counterpart who possesses less qualifications and less experience.

23.     During that same conversation, SEAN PORTER voiced his opposition and concern regarding his failure to be considered for the promotion. Rather than address the reasons why Plaintiff was not selected, with no legitimate basis and without being prompted, HUNTLEY LAWRENCE informed Plaintiff that he and the PORT AUTHORITY noticed that Plaintiff possessed Florida License plates on his vehicle that he drove to work. HUNTLEY LAWRENCE refused to tell Mr. PORTER how Plaintiff's vehicle or plate designation was related to his employment at PORT AUTHORITY.

24.     Shortly thereafter, SEAN PORTER was forced to attend a meeting called by PORT AUTHORITY on company property, wherein PORT AUTHORITY, through HUNTLEY LAWRENCE, Director of Aviation and JOHN TUCCI, Investigator of Port Authority Office of The Inspector General, attempted to coerce Plaintiff into speaking to law enforcement officials in Florida. PORT AUTHORITY called SEAN PORTER to this meeting for the purpose of being questioned and interrogated related to SEAN PORTER'S vehicle registration and plate designation. SEAN PORTER was only granted the opportunity to leave the meeting due to the fact that he exercised his rights under the law. Plaintiff requested an attorney.

25.     SEAN PORTER retained counsel and subsequently learned through his

8

attorney that Florida law enforcement officers had commenced an investigation into SEAN PORTER based solely on a complaint filed by the PORT AUTHORITY agency. Upon information and belief, the PORT AUTHORITY instigated and initiated a Complaint against SEAN PORTER through Florida authorities.

26.     HUNTLEY LAWRENCE and JOHN TUCCI were the primary sources of these allegations and they remained in contact with Florida State Authorities throughout the prosecution. At no time did PORT AUTHORITY lodge any official complaints against SEAN PORTER at PORT AUTHORITY as these false allegations were clearly outside the scope of SEAN PORTER'S employment at PORT AUTHORITY. To date, the PORT AUTHORITY has filed no formal employment and/or administrative charges against SEAN PORTER. Nonetheless, PORT AUTHORITY abused process and maliciously encouraged and instituted an action against SEAN PORTER through Florida State Authorities.

27.     PORT AUTHORITY engaged in abuse of process and baselessly caused Plaintiff to suffer prosecution by the Stat e of Florida. SEAN PORTER was charged with one count of PERJURY WITNESS MAKE FALSE WRITTEN DECLARATION 3802 (92.525 3), a Felony, and one count of FALSE STATEMENT IN TITLE TRANSFER 407 (319.33 1E), a felony. SEAN PORTER was arraigned on January 26, 2015 and was dismissed on March 11, 2015. SEAN PORTER was forced to incur monetary damages, which includes but is not limited to attorney fees.

28.     From the date that PORT AUTHORITY lodged a complaint with Florida and encouraged prosecution of SEAN PORTER, Plaintiff has sought the closing of the investigative file.Plaintiff was forced to defend this matter vigorously as formal charges

9

were instituted by Florida authorities based on the baseless complaints of PORT AUTHORITY. SEAN PORTER had no choice but to defend against these false accusations in criminal court with potential of a criminal record, jail time, probation and/or fines. Plaintiff repeatedly and continues to be harassed by Respondents as this is not the first time that Respondents have made false allegations against Plaintiff.

29.     SEAN PORTER was also subjected to continued harassment and intimidation by the PORT AUTHORITY related to the criminal charges lodged against Plaintiff. Posters of his arrest have been (some of the dates include on or around 1/25/15, 2/24/15) and continue to be occasionally displayed throughout the PORT AUTHORITY administration building, and when removed new ones appear the next day. Defendants were served with a Cease and Desist Letter dated April 14, 2015, directing Defendants to cease and desist from sabotaging, harassing, overly scrutinizing and spreading this defamatory information to a critical number of people through various people inside and outside the Port Authority agency.

30.     The harassing and intimidating conduct by Defendants continue insofar as various PORT AUTHORITY employees are unreasonably monitoring and investigating Plaintiff's personal conduct outside of the PORT AUTHORITY. One example is that on or about April 9, 2015, Defendant's employee, Detective Steve Poulos from PORT AUTHORITY visited Qatar Airways' Office at JFK Airport demanding information about Plaintiff's personal travel arrangements and the details surrounding same. Without the proper authority or legal standing, Detective POULOS also demanded that Qatar Airways provide him with copies of Plaintiff's payment information and supporting documentation.

31.     On ort about April 16, 2015, Plaintiff received a letter of reprimand from

THOMAS L. BOSCO accusing Plaintiff of improper destruction of PORT AUTHORITY prisoner property at the JFK Lost and Found.

32.     Again, on or about April 21, 2015, Defendant's employee Detective Divita approached a member of Plaintiff's family in an effort to intimidate him into providing personal travel information regarding Plaintiff. Without the proper authority or legal standing, Detective Divita called Plaintiff's family member and employee of JetBlue into the office and demanded that he provide copies of Plaintiff's payment information and supporting documentation.

33.     SEAN PORTER has suffered embarrassment and humiliation at the hands of PORT AUTHORITY. SEAN PORTER was forced to consider resignation based on the conduct of PORT AUTHORITY.

## AS AND FOR A FIRST COUNT
## 42 U.S.C. §1981

34.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 33 of this Complaint with the same force and effect as though fully set forth herein.

35.     The discriminatory and retaliatory conduct referenced in paragraphs 1 through 30 of this Complaint denied Plaintiff of his rights to freedom of movement, protection from procedural and substantive due process, and the right to equal protection under the laws. These rights are guaranteed to the Plaintiff under 42 U.S.C. §1981.

36.     The custom, pattern and practice referenced in paragraphs 1 through 30 of this Complaint were in part based on race and color and based on Plaintiff's opposition to

11

discriminatory, retaliatory and other unlawful conduct that occurred at the hands of Defendants in the PORT AUTHORITY.

37.      Because of Plaintiff's race, color and opposition to discrimination and unlawful practices, Defendants subjected Plaintiff to mistreatment, harassment, hostile work environment, and different treatment than other similarly situated Caucasian employees, as detailed in the allegations listed above.

38.      Defendants violated public policy by in discriminating against Plaintiff because of his race, color and opposition to discrimination, retaliation and other unlawful practices.

39.      As a direct and proximate result of the aforesaid acts of the defendants and each of them, plaintiff suffered great harm, mental anguish and violation of rights from then until now and he will continue to so suffer in the future having been greatly humiliated and mentally injured, as a result of the foregoing acts of the defendants.

40.      Plaintiff has suffered severe humiliation, anxiety, fear, and emotional and physical psychological harm as a direct result of the conduct of Defendants, including but not limited to being publicly arrested, accused and imprisoned by Florida Authorities, by being ridiculed within and outside the workplace, by being constantly followed, closely monitored and overly scrutinized.

41.      As a direct and proximate result of the Defendants' unlawful acts, the Plaintiff has been exposed to disgrace, public humiliation and embarrassment and has been damaged in the sum of Three Million Dollars ($3,000,000.00), including the cost of this action, attorney's fees pursuant 42 U.S.C. §1988 and punitive damages.

## AS AND FOR A SECOND COUNT
## 42 U.S.C. §1983 - FOURTH, FIFTH AND
## FOURTEENTH AMENDMENTS

42.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 41 of this Complaint with the same force and effect as though fully set forth herein.

43.     DEFENDANTS have deprived Plaintiff of his Fourth, Fifth and Fourteenth Amendment rights, and caused such deprivation of rights by being unfairly targeted as an employee of African descent, by his work being unfairly scrutinized and monitored, by being denied a promotion, benefits and accommodations, by being unlawfully and falsely accused, maliciously prosecuted, wrongfully arrested and jailed by Florida Authorities due to insistence by PORT AUTHORITY Defendants, and by his personal actions outside of PORT AUTHORITY being questioned, monitored and investigated as described above in paragraphs 1 through 30 of this Complaint.

44.     In addition to the allegations listed in paragraphs 1 through 30 of this Complaint, on or about January 26, 2015, Plaintiff was placed in fear of his life, falsely arrested, falsely seized, detained, and held for an unreasonable period of time against his will without justification, explanation or rationale for such detention.

45.     Upon information and belief such seizure, arrest and detention was ordered and was a callous, deliberate indifference to Plaintiff and his livelihood and needs directed by PORT AUTHORITY DEFENDANTS.

46.     As part of the false arrest, detention and accusations, Defendants caused Plaintiff to be seized, arrested and held in a compromising position for an unreasonable time

without probable cause and be deprived of his liberty, without due process and was further exposed to disgrace, public humiliation and embarrassment.

47.     The defendants individually and collectively knew at the time of Plaintiff's Interrogation, charging and arrest and at all times since then that the evidence they had in connection with the charges brought against plaintiff were inconsistent with and insufficient to establish his guilt and were based solely, or in part, on his race and color, retaliation and malicious intent.

48.     Each of the INDIVIDUAL DEFENDANTS separately and in concert acted outside the scope of their jurisdiction and without authorization of law and each of the defendants, separately and in concert acted willfully, knowingly and purposefully with the specific intent to deprive plaintiff of his right to freedom from illegal seizure of his person, freedom from illegal detention and imprisonment. All of these rights are secured to plaintiff by the provisions of the due process clause of the Fifth and Fourteenth Amendments to the Constitution of the United States, the Fourth Amendment, as well as the equal protection clause of the Fourteenth Amendment and by 42 U.S.C. § 1983.

49.     Upon information and belief, the INDIVIDUAL DEFENDANTS each took an active role in creating and manufacturing the charges against plaintiff due to his race and color, due to his participation in protected activities and opposition to some of the conduct within the PORT AUTHORITY.

50.     DEFENDANTS committed said acts with the shared purpose of denying Plaintiff's rights to freedom of movement, protection from procedural and substantive due process, and the right to equal protection under the laws. These rights are guaranteed to the Plaintiff under the Fourth, Fifth and Fourteenth Amendments.

51.     In instigating and causing the malicious prosecution, abuse of process, false arrest, false imprisonment, abuse, detention and interrogation of Plaintiff, and denying Plaintiff his right to free speech, the DEFENDANTS and each of them knew or should have known they were violating laws of the Federal Government, the State of New York and those statutory and constitutional rights set forth herein and have failed to prevent the same and therefore acted in concert to harm Plaintiff.

52.     Plaintiff was forced to incur great expense to the date of the filing of this complaint for attorney's fees, investigation expenses, and other expenses in clearing his name against the unfounded and unwarranted allegations by the DEFENDANTS, which have been a serious burden to plaintiff.

53.     As a direct and proximate result of the aforesaid acts of the defendants and each of them, plaintiff suffered great harm, mental anguish and violation of rights from then until now and he will continue to so suffer in the future having been greatly humiliated and mentally injured, as a result of the foregoing acts of the defendants.

54.     Plaintiff has suffered severe humiliation, anxiety, fear, and emotional and physical psychological harm as a direct result of the conduct of Defendants, including but not limited to being publicly arrested, accused and imprisoned by Florida Authorities, by being ridiculed within and outside the workplace, by being constantly followed, closely monitored and overly scrutinized.

55.     As a direct and proximate result of these acts, Plaintiff has been exposed to disgrace, public humiliation and embarrassment and damaged in sum of Three Million Dollars ($3,000,000.00), including cost of this action, §1988 attorney's fees and punitive damages.

## AS AND FOR A THIRD COUNT
## 42 U.S.C.§ 1983 MUNICIPAL VIOLATIONS

56.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 55 of this Complaint with the same force and effect as though fully set forth herein.

57.     Prior to June of 2014, the PORT AUTHORITY has permitted and tolerated a custom, pattern and practice of unjustifiably, unreasonable and illegally treating employees of African descent differently from other similarly situated employees in various ways, including but not limited to, overly scrutinizing, targeting and monitoring employee work and conduct, applying the policies and procedures differently, denying promotions, benefits, and accommodations, baselessly seeking trumped charges against employees internally and externally, retaliating against employees for opposing certain improper/unlawful conduct by superiors and retaliating against employees for participating and/or testifying on behalf of another employee in PORT AUTHORITY administrative actions and/or external criminal proceedings.

58.     Although same was improper, the PORT AUTHORITY DEFENDANTS and other employees officers involved were not seriously prosecuted, disciplined or subjected to restraint and such incidents were in fact covered up with official claims that the continued harassment and differential treatment were justified and proper. As a result, PORT AUTHORITY DEFENDANTS and certain employees caused and encouraged to believe that minorities, and more specifically persons of African descent, could be mistreated under circumstances as referenced above and that the PORT AUTHORITY would in fact permit such behavior.

59.     In addition to permitting a pattern of practice of improper treatment of minority persons, the PORT AUTHORITY has failed to maintain a proper system for investigation of all incidents of unjustified discipline and charges, and all external charges brought against certain employees by management and personnel of PORT AUTHORITY.

60.     The PORT AUTHORITY has failed to respond to the continuing and urgent need to prevent, restrain and discipline PORT AUTHORITY who deprive civil rights of, and abuse, minorities.

61.     Any system allegedly maintained by the PORT AUTHORITY failed to properly review unjustified behavior and treatment and has failed to identify the improper abuse, misuse, violative acts against certain employees by management and personnel of PORT AUTHORITY in order to discipline, closely supervise or restrain these wrongdoers to the extent that it has become the custom of the PORT AUTHORITY to tolerate the wrongful actions by management and personnel of PORT AUTHORITY.

62.     Upon information and belief, specific systemic flaws in the PORT AUTHORITY'S purported review process include but are not limited to the following:

•       Preparing reports regarding investigations of unwarranted incidents as routine point-by-point justification of the management and personnel of PORT AUTHORITY's actions regardless of whether such actions are justified;

•       PORT AUTHORITY's investigation of unwarranted incidents systematically fail to credit testimony by non-management (and sometimes management of minority descent) witnesses and uncritically rely on reports by management and personnel involved in the incident;

•       PORT AUTHORITY's investigation of unwarranted incidents fail to include in their reports relevant factual information which would tend to contradict the statements of the management and personnel involved in the incident;

•       Supervisory management and personnel involved in the incident at times issue public statements exonerating other management and personnel involved in

16

the incident for misconduct, before the investigation of the incident by the PORT AUTHORITY has been completed;

* Reports of discrimination, harassment and retaliation by PORT AUTHORITY employees are not reviewed for accuracy by supervisory management and personnel. Conclusions are frequently permitted to be drawn on the basis of clearly incorrect or contradictory information.

63.     The foregoing acts, omissions, systemic flaws, policies and customs of the PORT AUTHORITY caused management and personnel of the PORT AUTHORITY to believe that discrimination, harassment and retaliation and other improper actions would not be aggressively, honestly and properly investigated with the foreseeable result that certain management and personnel are most likely to differently treat employees who are of a certain racial background, who have engaged in protected activities and/or have spoken out against improper and illegal conduct at the PORT AUTHORITY.

64.     As a direct and proximate result of the aforesaid acts, omissions, systemic flaws, policies and customs of the defendant PORT AUTHORITY, the other defendants and outside agency unjustifiably mistreated, illegally arrested and wrongfully detained the plaintiff. All in violation of the plaintiff's civil and constitutional rights and he has suffered and will continue to suffer from psychological harm, humiliation, fear, defamation of character and injury to reputation. All of these rights are secured to plaintiff by the provisions of the Fourth Amendment, the due process clause of the Fifth and Fourteenth Amendments to the Constitution of the United States and by 42 U.S.C. § §1981, 1983 1985 and 1986 and the laws of the State of New York.

65.     That by reason of the foregoing, Plaintiff has been placed in fear of his life, exposed to disgrace, public humiliation and embarrassment and has been damaged in the

sum of Three Million dollars ($3,000,000.00).

## AS FOR A FOURTH COUNT
### 42 U.S.C.§ 1985

66.     The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 65 of this complaint with the same force and effect as though fully set forth herein.

67.     Defendants' accusations and allegations against plaintiff were false, malicious, negligent, reckless, intentional and wrongful and were intended to cause plaintiff injury and to harass plaintiff.

68.     Defendants' actions against Plaintiff within the place of employment were malicious, negligent, reckless, intentional and wrongful and were intended to cause plaintiff injury and to harass plaintiff.

69.     Defendants' actions against Plaintiff outside the place of employment were malicious, negligent, reckless, intentional and wrongful and were intended to cause plaintiff injury and to harass plaintiff.

70.     Defendants, and each of them, expressly and impliedly, agreed with each other to bring about the malicious prosecution, abuse of process, seizure, arrest, detention and false accusation of Plaintiff, all without lawful or proper basis or justification on account of his race and color, on account of a custom, policy and practice and on account of Plaintiff engaging in protected activity and opposing unlawful practices by the employer. All of this was done without consideration of Plaintiff's rights and in violation of all of Plaintiff's rights.

71.     Defendants, and each of them, expressly and impliedly, agreed with each other

to bring about the mistreatment, harassment and differential treatment, all without lawful or proper basis or justification on account of his race and color, on account of a custom, policy and practice and on account of Plaintiff engaging in protected activity and opposing unlawful practices by the employer. All without consideration of plaintiff s rights and in violation of all of plaintiff s rights.

72.     That the malicious prosecution, abuse of process, false arrest, false imprisonment and violation of the laws of the State of New York and plaintiff s civil rights were brought about and caused by the actions of defendants and that the same were a clear and intentional abuse of process causing plaintiff damages. All of these rights are secured to plaintiff by the provisions of the Constitution of the United States and by 42 U.S.C. § 1985.

73.     That by reason of the foregoing, plaintiff has been placed in fear of their lives, exposed to disgrace, public humiliation and embarrassment and have been damaged in the sum of Three Million dollars ($3,000,000.00).

## AS FOR A FIFTH COUNT
### 42 U.S.C. § 1986

74.     The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 73 of this complaint with the same force and effect as though fully set forth herein.

75.     PORT AUTHORITY DEFENDANTS knew or should have known that the malicious prosecution, abuse of process, false arrest, false imprisonment and violation of the laws of the State of New York against violated the Plaintiff's rights, guaranteed to him under the Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. §§1981, 1983, 1985 and 1986.

76.     PORT AUTHORITY DEFENDANTS knew or should have known that the

mistreatment, harassment and differential treatment of Plaintiff, that the custom, policy and practice of PORT AUTHORITY all violated the Plaintiff s rights, guaranteed to him under the Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. §1981, 1983, 1985 and 1986.

77.     Each of the said Defendants had the authority, ability and concurrent duty under 42 U.S.C. §1986 to prevent the malicious prosecution, abuse of process, false arrest, false imprisonment, false charging of the Plaintiff, the mistreatment, harassment and differential treatment of Plaintiff in and out of the workplace, yet neglected to prevent said violations from occurring, and further failed to intervene to protect or aid the Plaintiff when such violations did in fact occur.

78.     The INDIVIDUAL DEFENDANTS' failure to stop these wrongful actions constitutes a breach of their duty to do so under 42 U.S.C. §1986.

79.     PORT AUTHORITY and the INDIVIDUAL DEFENDANTS knew or should have known that the fabricated charges against Plaintiff were violative of their Fourth, Fifth and Fourteenth Amendment rights to due process, and were tantamount to unequal protection under the law, in violation of the Plaintiff s fundamental rights under the Constitution.

80.     PORT AUTHORITY and the INDIVIDUAL DEFENDANTS knew or should have known that the mistreatment, harassment and differential treatment of Plaintiff in and out of the workplace of Plaintiff were violative of their Fourth, Fifth and Fourteenth Amendment rights to due process, and were tantamount to unequal protection under the law, in violation of the Plaintiff s fundamental rights under the Constitution.

81.     Said Defendants had and continue to have the power to prevent the continued due process violations against Plaintiff yet have failed to prevent or encourage dismissal of the fabricated charges against the Plaintiff and have failed to prevent or stop the that the

mistreatment, harassment and differential treatment of Plaintiff.

82.     PORT AUTHORITY'S (through various departments and high level personnel) exoneration of and refusal to discipline the INDIVIDUAL DEFENDANTS for their misconduct against Plaintiff is neglectful of their duty to prevent the fmlher violation of Plaintiff's right to compensation under 42 U.S.C. §§'s 1981, 1983, 1985 and 1986, with such violation occurring as a result of said management and personnel being improperly cleared of any wrongdoing, despite physical evidence to the contrary.

83.     As a result of the failure of the above stated Defendants to prevent the known violations stated above, the Plaintiff has suffered extreme fear, personal humiliation and degradation, emotional and psychological harm, and physical injury from the actions of INDIVIDUAL DEFENDANTS.

84.     By reason of the foregoing, Plaintiff has been damaged in the sum of Three Million Dollars ($3,000,000.00).

## AS AND FOR A SIXTH COUNT
### FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION

85.     The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 84 of this complaint with the same force and effect as though fully set forth herein.

86.     The First Amendment of the United States Constitution states: Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; abridging the freedom of speech, or of the press; or of the right of the people peaceably to assemble, and to petition the government for redress of grievances. US Constitution, First Amendment

87.     Defendants violated the above Amendment to the Constitution due to the fact that Plaintiff was and still is an employee of Defendant PORT AUTHORITY, who engaged in protected speech, and as a result suffered an adverse employment action as well as suffered other consequences outside of employment, at the hands of Defendants.  The conduct taken against Plaintiff was in retaliation for Plaintiff exercising his protected rights and speaking out regarding complaints and violations of law as referenced herein. The exercise of Plaintiff's speech was a substantial or motivating factor in the adverse employment action and actions outside of the scope of Plaintiff's employment.

88.     Defendant PORT AUTHORITY is a state and municipal actor for the purposes of 42 U.S.C. Section 1983.

89.     The complaints are deemed expression protected under the First Amendment.

90.     Defendant PORT AUTHORITY and the individual Defendants violated Plaintiff's rights guaranteed under the Constitution when Defendants denied Plaintiff the right to exercise free speech and subsequently retaliated against Plaintiff.

91.     As a result of said intentional harm, Plaintiff has suffered continued emotional damage, including prolonged stress and anxiety, fear, and frustration, injury to his marital relations (including loss of consortium) and has been harmed monetarily in his incurring of attorney fees, travel expenses, lost wages from court appearances, other expenses incurred in the attempt to clear the Plaintiff from these false and maliciously imposed criminal charges.

92.     By reason of the foregoing, Plaintiff has been damaged in the sum of Three Million Dollars ($3,000,000.00).

## AS AND FOR A SEVENTH COUNT
## INTENTIONAL  INFLICTION  OF EMOTIONAL
## DISTRESS

93.      The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 92 of this complaint with the same force and effect as though fully set forth herein.

94.      The Defendants acted outrageously in the above-stated roles in the malicious prosecution, false arrest, abuse of process, defamation of character and public humiliation of Plaintiff.

95.      Said emotional harm was exacerbated by the fabricated criminal charges against the Plaintiff, known by INDIVIDUAL DEFENDANTS without basis, yet prosecuted, and by the denial of Plaintiff of her freedom with the intention of causing extreme further harm and duress to Plaintiff.

96.      The Defendants were aware or should have been aware that encouragement and initiation of baseless charges as well as continued support of charges against Plaintiff with a threat of imprisonment would cause severe and extreme emotional harm to Plaintiff.

97.      The Defendants were aware or should have been aware that the continued harassment and differential treatment would cause severe and extreme emotional harm to Plaintiff.

98.      As a result of said intentional harm, Plaintiff has suffered continued emotional damage, including prolonged stress and anxiety, fear, and frustration, injury to his marital relations (including loss of consortium) and has been harmed monetarily in his incurring of attorney fees, travel expenses, lost wages from court appearances, other expenses incurred in the attempt to clear the Plaintiff from these false and maliciously imposed criminal charges.

99.     That by reason of the foregoing, Plaintiff has been damaged in the sum of Three Million dollars ($3,000,000.00).

## AND AS FOR AN EIGHTH COUNT
### ABUSE OF PROCESS/MALICIOUS
### PROSECUTION

100.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 99 of this complaint with the same force and effect as though fully set forth herein.

101.    The lodging of false charges, wrongful arrest, malicious prosecution, abuse of process and other wrongful acts conducted against the Plaintiff by the INDIVIDUAL DEFENDANTS constituted unreasonable behavior as well as abuse of process, abuse of authority, breach of PORT AUTHORITY procedures, and violations of the Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights. The INDIVIDUAL DEFENDANTS negligently and recklessly breached their duty under 42 U.S.C. § 1986 to prevent the commission of the civil rights violations perpetrated against Plaintiff including violations of 42 U.S.C. §§ 1981, 1983, 1985 and 1986 and substantive and procedural due process infractions.

102.    Said abuse of process was continued by the PORT AUTHORITY'S refusal to adequately investigate and properly discipline the INDIVIDUAL DEFENDANTS for their actions against the Plaintiff. Specifically, the PORT AUTHORIYTY failed to investigate and verify the veracity of the Plaintiff's claims, despite Plaintiff complaining of such conduct and emphasizing the blatant lack of any probable cause for falsely accusing Plaintiff.

103.    The continued action taken by the INDIVIDUAL DEFENDANTS to maliciously prosecute, harass, and fully inconvenience the Plaintiff with false criminal

charges is an abuse of process, in that using the courts and judicial process to harass, intimidate, inconvenience and further damage the Plaintiff despite no significant evidence for prosecuting the baseless charges.

104.    Plaintiff contends that the continued action taken by the INDIVIDUAL DEFENDANTS to maliciously prosecute, harass, and fully inconvenience the Plaintiff with false criminal charges is an abuse of process, in that using the courts and judicial process to harass, intimidate, inconvenience and further damage the Plaintiff despite no significant evidence for prosecuting the baseless charges, was because of Plaintiff's race and color, PORT AUTHORITY'S unchecked custom, practices and policies, and Plaintiff's exercising of protected activities and opposition to unlawful practices.

105.    As of the filing of this Complaint, the charges against Plaintiff have been dismissed after months of Plaintiff maintaining his innocence.

106.    As a result of said abuse of process, Plaintiff has suffered continued emotional damage, including prolonged stress and anxiety, fear, and frustration, and has been harmed monetarily in his incurring of attorney fees, travel expenses, lost wages from court appearances, other expenses incurred in the attempt to clear the Plaintiff from these false and maliciously imposed criminal charges.

107.    By reason of the foregoing, Plaintiff has been damaged in the sum of Three Million Dollars ($3,000,000.00).

## AND AS FOR AN NINTH COUNT
### NEGLIGENCE

108.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 107 of this complaint with the same force and effect as

though fully set forth herein.

109.     The PORT AUTHORITY DEFENDANTS had a duty under 42 U.S.C. §§ 1983, 1985 & 1986, as well as under the Fourth, Fifth, and Fourteenth Amendments, and under New York State Law and their own rules and regulations, to prevent and cease INDIVIDUAL DEFENDANTS from instigating and causing the wrongful detainment, false arrest, false imprisonment, malicious and false charging and prosecuting, as well as a duty to investigate, supervise and discipline INDIVIDUAL DEFENDANTS and prevent other wrongful acts that were committed against Plaintiff.

110.     In actively inflicting and failing to prevent the above stated abuses incurred by Plaintiff, all of the Defendants acted unreasonably, recklessly, and negligently in failing to exercise the slightest amount of due care to secure and protect the civil and constitutional rights of the Plaintiff against the aforementioned violations. Said rights are guaranteed to the Plaintiff by 42 U.S.C. §§ 's 1983, 1985, and by the Fourth, Fifth and Fourteenth Amendments of the Constitution.

111.     The breach of duty under 42 U.S.C. § 1986 by PORT AUTHORITY DEFENDANTS was a direct and proximate cause of the harm suffered by Plaintiff. Said harm includes physical harm, pain and suffering which continues to this day, monetary expenses in lost wages and legal costs, personal humiliation, damage to reputation and loss of standing in the community, and severe emotional and psychological damage, resulting in the need to seek counseling for the trauma which he incurred.

112.     By reason of the foregoing, Plaintiff has been damaged in the sum of Three Million Dollars ($3,000,000.00).

## AND AS FOR A TENTH COUNT
### DEFAMATION

113.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 112 of this complaint with the same force and effect as though fully set forth herein.

114.    PORT AUTHORITY engaged in abuse of process and baselessly caused Plaintiff to suffer prosecution by the Stat e of Florida. SEAN PORTER was charged with one count of PERJURY WITNESS MAKE FALSE WRITTEN DECLARATION 3802 (92.525 3), a Felony, and one count of FALSE STATEMENT IN TITLE TRANSFER 407 (319.33 1E), a felony. SEAN PORTER was arraigned on January 26, 2015 and was dismissed on March 11, 2015.  SEAN PORTER was forced to incur monetary damages, which includes but is not limited to attorney fees.

115.    Defendants permitted the defamatory statements to be published in the cafeteria and around the place of employment with actual knowledge that the charges were false, and with reckless disregard to the truth or falsity.

116.    In the posted flyers, DEFENDANTS falsely alleged that Plaintiff was a criminal and gave the appearance that he was on a "Wanted" List by Florida or NY Authorities.

117.    Each of these statements and accusations were maliciously made and were false and were intended to harm plaintiff in his good name, reputation and business.

118.    Upon information and belief, Plaintiff is not a public figure and is not involved in any public controversy in connection with his profession and/or business. Defendants' defamatory statements do not involve a matter of public concern.

119.    Defendants intentionally published a defamatory statement by lodging the complaint and encouraging the prosecution of false criminal charges against Plaintiff for the purpose of injuring Plaintiff.

120.    As a result of said criminal charges filed against Plaintiff by Defendants, Plaintiff sustained loss of reputation, loss of money and loss of time.

121.    By reason of the foregoing, Plaintiff has been damaged in the sum of Three Million Dollars  ($3,000,000.00).

## AND AS FOR AN ELEVENTH COUNT
### BREACH OF CONTRACT

122.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 121 of this complaint with the same force and effect as though fully set forth herein.

123.    The Defendants extended an offer of employment to Plaintiff, which carried with it the implied promises that Plaintiff would be treated fairly and in good faith, and not discriminated against due to his race, color, nationality or retaliation during the course of his employment with the Defendants.

124.    At the time that Defendants extended an offer of employment to Plaintiff, Defendants provided Plaintiff with employment material that included terms and statements, and written assurances, representations and promises by the DEFENDANTS, that employees would not unlawfully discriminate against Plaintiff, based on color, race, national origin, and retaliation during the course of Plaintiff's employment relationship with the Defendants.

125.    At the time of hire, Plaintiff was induced into accepting employment with Defendant PORT AUTHORITY, in lieu of pursuing and accepting other employment opportunities; throughout the course of his employment, Plaintiff was further induced into

continuing his employment with the Defendants, based in substantial part on the Defendants' specific promises and assurances (oral and express) that they would not discriminate against the Plaintiff, with respect to his employment conditions. Said promises and the Agreement thus constituted an implied employment contract, and created a duty of good faith and fair dealings on the part of Defendants.

126. One example of these representations includes Defendants' Nondiscrimination Policy Statement, which includes in relevant part that, "it is the policy of The Port Authority of New York and New Jersey (Port Authority) that no person shall be excluded from participation in, be denied the benefits of, or be subjected to discrimination in the receipt of its services on the basis of race, color, national origin…"

127. Another example of these representations is the Equal Employment Opportunity Statement, which includes, in relevant part that "The Port Authority will also continue to provide each employee with an equal opportunity to work in an environment free from harassment where they can contribute and remain productive. Harassment by supervisors or co-workers on the basis of race, color, religion, sex, national origin, age, disability, genetic information or any other federally protected category is an unlawful employment practice prohibited by the Port Authority"

128. Another example of these representations is the Whistleblower Protection Policy, which states in relevant part that, "the policy provides Port Authority and PATH employees and third parties with the ability to step forward without fear of retaliation and report conduct that they know or reasonably believe involves corruption, criminal activity, other violation of applicable federal, state or local laws, rules or regulations, conflict of interest, gross mismanagement, gross waste of funds or abuse of authority."

129.    Defendants' implied promises/implied employment contract carried a duty to discipline or attempt to discipline the Plaintiff only in good faith, and further carried a duty not to discriminate against Plaintiff based on his race, color, and national origin or in retaliation for opposing discriminatory practices.

130.    The Plaintiff accepted the offer of employment with the Defendants, and continued his employment due to his reliance to his detriment on the above stated assurances, promises, and implied employment contract not to discriminate against him with respect to terms and conditions of employment, discipline or cessation of employment.

131.    The Plaintiff performed in an above satisfactory manner throughout the duration of his employment with the Defendant PORT AUTHORITY.

132.    The Defendants breached their duties to the Plaintiff under the implied contract when they discriminated and retaliated against the Plaintiff, harassed Plaintiff targeted Plaintiff because of his exercise of protected activities and because of his race, color, creed and national origin, failed to provide Plaintiff with proper employment opportunities and diminished Plaintiff's opportunities for professional advancement.

133.    As a result of Defendants' acts, Plaintiff suffered and is entitled to a sum in excess of Three million dollars ($3,000,000.00).

### AND AS FOR A TWELFTH COUNT
### NEW YORK CIVIL SERVICE
### LAW SECTION 75-B

134.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 133 of this complaint with the same force and effect as though fully set forth herein.

135.     Plaintiff is a protected whistleblower who was subjected to discrimination, retaliation (punishment, prosecution, harassment, etc.) for speaking out against violations of the law as referenced herein.

136.     NY Civil Service Law Section 75-B state in relevant part, that "a public employer shall not dismiss or take other disciplinary or other adverse personnel action against a public employee regarding the employee's employment because the employee discloses to a governmental body information…(ii) which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action."

137.     Defendants discriminated and retaliated (punishment, prosecution, harassment, etc.) against Plaintiff in the terms and conditions of his employment in violation of NY Civil Service Law Section 75-B.

138.     All of the aforementioned acts in the causes of actions of the individual defendants complained of herein were willful, wanton, malicious and oppressive. They acted with callous disregard, recklessness and deliberate indifference toward the rights of the Plaintiff and without concern for the damage they would cause.

139.     Defendants' acts were motivated by a desire to harm plaintiff without regard for plaintiff's well being and were based on a lack of concern and ill will towards plaintiff. Such acts therefore deserve an award of Three Million Dollars ($3,000,000.00) as punitive damages.

### AND AS FOR A THIRTEENTH COUNT
### NEW YORK CITY ADMINSITRATIVE CODE

140.     The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 139 of this complaint with the same force and effect as

31

though fully set forth herein.

141. The Administrative Code of the City of NY, Title 8, Sections 8-107(1), (6), (7), (13), (19), amongst other sections, prohibit discrimination, retaliation, aiding and abetting, coercion, intimidation, and requires immediate corrective action for such behavior.

142. Defendants engaged in discriminatory and retaliatory conduct against plaintiff, created and maintained discriminatory and retaliatory working conditions, engaged in harassment and intimidation tactics against Plaintiff. Defendants also failed to take corrective actions but rather joined in the unlawful conduct against Plaintiff. All of this was in violation of the NY Civil Service Law.

143. All of the aforementioned acts in the causes of actions of the individual defendants complained of herein were willful, wanton, malicious and oppressive. They acted with callous disregard, recklessness and deliberate indifference toward the rights of the Plaintiff and without concern for the damage they would cause.

144. Defendants' acts were motivated by a desire to harm plaintiff without regard for plaintiff's well being and were based on a lack of concern and ill will towards plaintiff. Such acts therefore deserve an award of Three Million Dollars ($3,000,000.00) as punitive damages.

## AND AS FOR A FOURTEENTH COUNT
## PUNITIVE DAMAGES

145. The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 144 of this complaint with the same force and effect as though fully set forth herein.

146. All of the aforementioned acts in the causes of actions of the individual

defendants complained of herein were willful, wanton, malicious and oppressive. They acted with callous disregard, recklessness and deliberate indifference toward the rights of the Plaintiff and without concern for the damage they would cause.

147. Defendants' acts were motivated by a desire to harm plaintiff without regard for plaintiff's well being and were based on a lack of concern and ill will towards plaintiff. Such acts therefore deserve an award of Three Million Dollars ($3,000,000.00) as punitive damages.

**WHEREFORE,** Plaintiff demands judgment against defendants:

a.    On the First Count in the sum of Three Million dollars ($3,000,000.00);

b.    On the Second Count in the sum of Three Million dollars ($3,000,000.00);

c.    On the Third Count in the sum of Three Million dollars ($3,000,000.00);

d.    On the Fourth Count in the sum of Three Million dollars ($3,000,000.00);

e.    On the Fifth Count in the sum of Three Million dollars ($3,000,000.00);

f.    On the Sixth Count in the sum of Three Million dollars ($3,000,000.00);

g.    On the Seventh Count in the sum of Three Million dollars ($3,000,000.00);

h.    On the Eighth Count in the sum of Three Million dollars ($3,000,000.00);

i.    On the Ninth Count in the sum of Three Million dollars   ($3,000,000.00);

j.    On the Tenth Count in the sum of Three Million dollars ($3,000,000.00);

k.    On the Eleventh Count in the sum of Three Million dollars ($3,000,000.00);

l.    On the Twelfth Count in the sum of Three Million dollars ($3,000,000.00);

m.    On the Thirteenth Count in the sum of Three Million dollars ($3,000,000.00);

n.    On the Fourteenth Count in the sum of Three Million dollars ($3,000,000.00);

o.    Award costs of this action including attorney's fees to the plaintiff; and

p.     Award such other and further relief, as this Court may deem appropriate.

Dated: June 17, 2015
       Port Jefferson Station, New York

CARTRIGHT AND COMPANY

VALERIE M. CARTRIGHT, Esq.
Attorneys for PLAINTIFF
P.O. BOX 972
Port Jefferson Station, New York 11776
(631) 743-9139

34